IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TESTING ENGINEERS INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ICON DIRECT, LLC,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00656-RJS-DAO<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

This case involves Defendant Icon Direct, LLC allegedly using falsified product listing sheets and statements when promoting products on its website. Pending before the court is Icon Direct's Motion to Dismiss for lack of personal jurisdiction and improper venue.[1] For the reasons explained below, the Motion is DENIED.

[1] Dkt. 34, *Defendant Icon Direct LLC's Motion to Dismiss for Lack of Jurisdiction and Improper Venue* (*Motion*).

## FACTUAL BACKGROUND[2]

Plaintiff Testing Engineers International, Inc. (TEi) is a Utah corporation that tests and certifies a variety of products to assure they meet specific safety, quality, or governmental standards.[3] TEi is one of the premier organizations for product and process testing and standards compliance.[4] A certification from TEi assures consumers the product complies with published standards of safety and quality.[5]

Once a product has been certified and listed by TEi, TEi provides an official "Product Listing Sheet."[6] Each page of the Product Listing Sheet displays the following certification mark (TEi's Certification Mark):

---

[2] The court "accept[s] as true the well-pleaded (that is, plausible, non-conclusory, and non-speculative) facts alleged in the complaint, unless they are controverted by sworn statements." *XMission, L.C. v. Fluent L.L.C.*, 955 F.3d 833, 836 (citation modified) (10th Cir. 2020). The court may also consider sworn statements attached to a briefing when determining its jurisdiction. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th Cir. 2008). But the court will not consider evidence first raised in a reply brief. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164–65 (10th Cir. 1998). The following facts are drawn from the Complaint and the declarations attached to the Motion and Opposition. *See* Dkt. 31, *First Amended Complaint for Trademark Infringement, Unfair Competition, and an Accounting* (*Complaint*); Dkt. 34-2, *Declaration of Mike Waumans Jr. in Support of Defendant Icon Direct LLC's Motion to Dismiss for Lack of Jurisdiction and Improper Venue or, in the Alternative, Transfer to the Eastern District of Michigan* (*Waumans Declaration*); Dkt. 37, *Declaration of Alona MacGregor in Support of Plaintiff's Opposition to Motion to Dismiss for Lack of Jurisdiction and Improper Venue* (*MacGregor Declaration*). The court does not consider the Supplemental Declaration attached to Icon Direct's Reply brief. Dkt. 38-1, *Supplemental Declaration of Mike Waumans Jr. in Support of Defendant Icon Direct LLC's Reply in Support of its Motion to Dismiss for Lack of Jurisdiction and Improper Venue, or in the Alternative, Transfer to the Eastern District of Michigan*.

[3] *Complaint* ¶ 5.

[4] *Id.* ¶ 17.

[5] *Id.* ¶ 23.

[6] *MacGregor Declaration* ¶¶ 16, 20; *see also* Dkt. 37-1, *Alpha Systems, LLC Product Listing Sheet* (*Sample Listing Sheet*).

[7]

The Product Listing Sheet also includes TEi's contact information, including its Salt Lake City, Utah address, in the header of every page.[8] The bottom of each page states, "Product Listing covers only those products under contract with [TEi]" and "[n]o alteration of this document is authorized."[9]

TEi owns U.S. certification mark registration number 2,039,643 for the TEi Certification Mark.[10] TEi licenses the TEi Certification Mark to licensees whose products it has tested.[11] Since 1997, TEi's certification holders have used the TEi Certification Mark in connection with the recreational vehicle (RV) industry.[12]

Icon Direct is a Michigan limited liability company that manufactures and sells products for the RV industry, including trailers, campers, and motor homes.[13] Icon Direct operates

---

[7] *Sample Listing Sheet*; *see also Complaint* ¶¶ 18, 19.

[8] *MacGregor Declaration* ¶ 21; *see also Sample Listing Sheet*.

[9] *MacGregor Declaration* ¶ 23; *see also Sample Listing Sheet*.

[10] *Complaint* ¶¶ 18, 19.

[11] *Id.* ¶ 5.

[12] *Id.* ¶ 21.

[13] *Id.* ¶ 6; *see also Waumans Declaration* ¶¶ 2–3.

RecPro.com, an e-commerce business and aftermarket platform.[14] Icon Direct principally operates in Indiana, and it does not have offices or employees located in Utah.[15]

On or after July 12, 2018, Icon Direct obtained TEi's Product Listing Sheet from a third party or from TEi's website and altered it for Icon Direct's purposes.[16] Beginning as early as September 28, 2020, Icon Direct began using product listing sheets (Falsified Product Listing Sheets) that included the TEi's Certification Mark and state the certification is "Issued To: RecPro."[17] The Falsified Product Sheet otherwise matches TEi's Product Listing Sheet, including identifying TEi as the source of the certification and prominently featuring TEi's Salt Lake City, Utah mailing address in the header of each page.[18]

TEi has never contracted with Icon Direct for the testing or certification of any product.[19] But, "upon information and belief," Icon Direct has marketed and sold more than eighty-five products that claim certification by TEi.[20]

---

[14] *Complaint* ¶ 7.

[15] *Waumans Declaration* ¶¶ 2, 5.

[16] *Complaint* ¶ 28. The terms "listing" and "certification" are interchangeable. *MacGregor Declaration* ¶ 5.

[17] *Complaint* ¶ 29; *see also* Dkt. 31-2, *Exhibit B* (*Falsified Product Listing Sheets*).

[18] *Compare Falsified Product Listing Sheets*, *with Sample Listing Sheet*; *see also Complaint* ¶¶ 32–33.

[19] *Id.* ¶¶ 31, 34, 38–41; *MacGregor Declaration* ¶ 26.

[20] *Complaint* ¶ 37 (listing categories of products).

## PROCEDURAL HISTORY

On August 6, 2025, TEi initiated this action.[21] On April 9, 2026, TEi amended the Complaint.[22] On April 23, 2026, Icon Direct filed the Motion.[23] The court heard oral argument on September 9, 2026.[24] The Motion is fully briefed and ripe for resolution.[25]

## LEGAL STANDARD

The Motion seeks dismissal for lack of personal jurisdiction and improper venue under Federal Rule of Civil Procedure 12(b)(2) and (3).[26]

Under Rule 12(b)(2), the "plaintiff bears the burden of establishing personal jurisdiction over the defendant."[27] At the motion to dismiss phase, the plaintiff need only make a prima facie showing.[28] The plaintiff makes such a showing by "presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) 'that if true would support jurisdiction over the defendant.'"[29] "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[30]

---

[21] Dkt. 1, *Complaint for Trademark Infringement, Unfair Competition, and an Accounting*.

[22] Dkt. 1, *Complaint.*

[23] *Motion*.

[24] Dkt. 42, *Minute Entry*.

[25] Dkt. 36, *Plaintiff's Opposition to Motion to Dismiss for Lack of Jurisdiction and Improper Venue* (*Opposition*); Dkt. 38, *Defendant Icon Direct LLC's Reply in Support of its Motion to Dismiss for Lack of Jurisdiction and Improper Venue* (*Reply*).

[26] *Motion* at 10–21.

[27] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

[28] *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

[29] *XMission*, 955 F.3d at 839 (quoting *OMI Holdings*, 149 F.3d at 1091).

[30] *Behagen*, 744 F.2d at 733.

"Venue is proper if it 'satisfies the requirements of federal venue laws.'"[31] "The Tenth Circuit appears to follow the majority rule that a plaintiff bears the burden of proving proper venue, just as a plaintiff bears the burden of proving personal jurisdiction."[32] In meeting this burden, TEi may rely on any uncontroverted, well-pled facts in the Complaint.[33]

## ANALYSIS

### I. Personal Jurisdiction

This court may exercise personal jurisdiction over an out-of-state defendant if (1) Utah's long-arm statute authorizes service of process on the defendant and (2) that service comports with federal constitutional due process.[34] Utah's long-arm statute is coextensive with the federal due process clause.[35] Under Utah law, the two-step inquiry collapses into the federal due process analysis.[36]

The federal Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[37] Exercising personal jurisdiction over an out-of-state defendant comports with federal due process if (1) the defendant has "minimum contacts" with the state of Utah such that (2) "having to defend a lawsuit there would not 'offend traditional

---

[31] *Nursa, Inc. v. Younge and Crane, Inc.*, No. 2:24-cv-00900-RJS-CMR, 2025 WL 2687149, at *5 (D. Utah Sep. 19, 2025) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)).

[32] *Cox v. Sullivan*, No. 14-CV-206-TCK-FHM, 2014 WL 4352088, at *2 (N.D. Okla. Sep. 2, 2014) (citing *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)); *see also Nursa*, 2025 WL 2687149, at *5 n.68 (explaining the majority rule).

[33] *See Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012) (explaining that "a plaintiff may rest on the well-pled facts in the complaint to oppose a motion to dismiss for improper venue, but only to the extent such facts are uncontroverted by defendant's evidence" (citation modified)); *Nursa*, 2025 WL 2687149, at *5.

[34] *XMission*, 955 F.3d at 839.

[35] Utah Code § 78B-3-201(3) (West 2008); *see also Fenn v. Mleads Enters., Inc.*, 137 P.3d 706, 710 n.10 (Utah 2006) (stating the Utah long-arm statute "hinges on whether due process permits the exercise of jurisdiction").

[36] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[37] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

notions of fair play and substantial justice'"[38] The minimum contacts prong may be met through general jurisdiction or specific jurisdiction. Specific jurisdiction is at issue here.[39] Specific jurisdiction exists "if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'"[40] The court considers each step in turn.

*A. Minimum Contacts*

The minimum contacts element requires analyzing the quantity and quality of the defendant's contacts with the forum state.[41] TEi must show (1) Icon Direct purposely directed its activities at Utah, and (2) TEi's injuries arise out of Icon Direct's Utah-related activities.[42]

1. Purposeful Direction

Purposeful direction requires "that a defendant have deliberately engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed itself of the privilege of conducting business there."[43] This requirement "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of

---

[38] *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[39] General jurisdiction exists if a person's "contacts with the State are so 'continuous and systematic' that the person is essentially at home in the State." *XMission*, 955 F.3d at 840 (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017)). No party argues Utah has general jurisdiction over Icon Direct. *See Motion*; *Opposition* at 11 n.5.

[40] *XMission*, 955 F.3d at 840 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also OMI Holdings*, 149 F.3d at 1091 (citation modified).

[41] *XMission*, 955 F.3d at 840.

[42] *See id.*

[43] *Id.* (citation modified). This prong is usually called "'purposeful direction' in the tort context and 'purposeful availment' in the contract context," but the two terms "denote the same requirement." *Old Republic*, 877 F.3d at 904 n.11. Because Icon Direct brings a tort claim, this Order uses the purposeful direction term.

random, fortuitous, or attenuated contacts, the unilateral activity of another party or a third person, or the mere foreseeability that its actions may cause injury in that jurisdiction."[44]

Under the harmful effects test, a plaintiff may establish purposeful direction by showing the "out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state."[45] The test has three elements: (1) the defendant acted intentionally, (2) that action was "expressly aimed at the forum state," and (3) the defendant knew "the brunt of the injury would be felt in the forum state."[46] In the internet context, the first and second elements are blurred: the plaintiff must show the defendant intentionally directed its internet activity at the forum state.[47] Simply maintaining a website accessible in Utah does not subject a defendant to personal jurisdiction here.[48]

In *Calder v. Jones*,[49] a California resident brought a libel suit in California against a reporter and editor from Florida.[50] The Supreme Court found purposeful direction was satisfied because California was "the focal point of the story and of the harm suffered."[51] The Supreme Court later clarified purposeful direction was met in *Calder* because the defendants there contacted "'California sources' for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the 'brunt' of that injury

---

[44] *XMission*, 955 F.3d at 840–41 (citation modified).

[45] *Old Republic*, 877 F.3d at 907 (emphasis in original).

[46] *Id.* (quoting *Dudnikov*, 514 F.3d at 1072) (citation modified).

[47] *See Shrader v. Biddinger*, 633 F.3d 1235, 1244 (10th Cir. 2011).

[48] *See id.* at 1235, 1241–44.

[49] 465 U.S. 783 (1984).

[50] *Id.* at 788–89.

[51] *Id.* at 789.

was suffered by the plaintiff in" California.[52] The Court concluded, "[j]urisdiction over the defendants was therefore proper in California based on the 'effects' of their Florida conduct in California."[53]

In *Shrader v. Biddinger*,[54] the Tenth Circuit applied *Calder*'s harmful effects test to an internet tort case.[55] There, after a business relationship deteriorated, an out-of-state defendant emailed his customers explaining why he was parting way with Plaintiff Shrader.[56] Another out-of-state defendant, Biddinger, then posted the email to an online trader's forum.[57] Shrader brought a defamation suit in Oklahoma.[58] The district court dismissed Biddinger for lack of personal jurisdiction, and the Tenth Circuit affirmed explaining:

> the forum where [Biddinger] posted the email targeted a trading community with no particular tie to Oklahoma. As for content, the email was about Mr. Shrader's work. That work was marketed and sold worldwide through the internet . . . and there is nothing about the nature of the work inherently linking it to Oklahoma . . . . He produced his materials in Oklahoma because he happened to live there; his professional reputation in the trading community was not tied to Oklahoma.[59]

Because "Oklahoma was not the focal point of the email posted by Mr. Biddinger, either in terms of its audience or its content," the Circuit found Oklahoma lacked personal jurisdiction.[60]

---

[52] *Walden*, 571 U.S. at 287.

[53] *Id.*

[54] 633 F.3d 1235 (10th Cir. 2011).

[55] *See id.* at 1244–45.

[56] *Id.* at 1237–38.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 1245.

[60] *Id.*

The District of Utah applied *Calder* and *Shrader* to facts similar to the facts at issue here in *Purple Innovations, LLC v. Honest Reviews, LLC*[61] and *Kindig It Design Inc. v. Creative Control, Inc.*[62] In *Purple Innovations*, the defendant took marketing photos and videos from the Utah-based plaintiff's website and posted them elsewhere, which damaged the plaintiff.[63] The District of Utah found, the "direct acquisition of Utah-based materials creates an actual, not merely a possible, contact with the forum, which constitutes a purposeful availment of the Utah forum."[64] Similarly, in *Kindig It Design Inc. v. Creative Control, Inc.*, the District of Utah found personal jurisdiction over the out-of-state defendant for all claims related to the defendant's alleged copying of photographs from the Utah-based plaintiff's website and using the photographs to create infringing websites.[65] The court concluded, the copying of the Utah company's website and use of the copied materials made it "foreseeable and reasonable that [Defendant] would be haled into a Utah court."[66]

TEi has shown the harmful effects test is met here. Icon Direct's conduct was intentional. As alleged in the Complaint, Icon Direct knew of the TEi Certification mark, intentionally altered TEi's product listing sheeting, posted the Falsified Product Listing Sheet

---

[61] No. 2:17-cv-138-DB, 2017 WL 3172810 (D. Utah Jul. 25, 2017).

[62] 57 F. Supp. 3d 1167 (D. Utah 2016); *see also SelectHealth, Inc. v. Risinger*, 18 F. Supp. 3d 1268, 1273–74 (D. Utah 2014) (finding purposeful direction met when "defendant copied web content from a Utah-based company and attached it to his own website to help him 'survey the demographics of visitors to the domain name'" because "the copied content garnered information from several hundred Utah residents," which was directed at Utah and not a nationwide audience).

[63] *Purple Innovations*, 2017 WL 3172810, at *5.

[64] *Id.* (citation modified) (quoting *Kindig*, 157 F. Supp. 3d at 1179).

[65] *Kindig*, 587 F. Supp. 3d at 1179.

[66] *Id.*

without TEi's authorization on its website, and intended the falsified mark to promote its products.[67]

Icon Direct aimed this activity at Utah by including the Salt Lake City, Utah address on the Falsified Product Listing Sheet.[68] Indeed, Icon Direct knew TEi was based in Utah, altered the TEi Product Listing Sheet to certify a RecPro product, and included TEi's Utah address on the Falsified Product Listing Sheet.[69] Like in *Calder*, where the defendant made false statements about the forum resident and its forum-based activities, here, Icon Direct falsely stated Utah-based TEi certifies its products in Utah.[70] Further, like *Calder*, *Purple Innovations*, and *Kindig*, the false statements were allegedly taken from a forum-based source: TEi's Product Listing Sheet.[71] Here, it is even more clear that Icon Direct knew it was directing its activity at Utah because the sheet includes TEi's Utah address—representing to customers the product had been certified by a Utah company in Utah when it had not.[72] The inclusion of the Utah address distinguishes this case from *Shrader*. In *Shrader*, Oklahoma was not the focal point of the email posted to the online trader's forum, which led the Circuit to conclude Oklahoma lacked personal jurisdiction.[73] Here, Utah is the focal point of the Falsified Product Listing sheet: the header of each page prominently features TEi's Salt Lake City, Utah address.[74] Altering TEi's Product Listing Sheet and posting the Falsified Product Listing Sheet with the Utah address makes it

---

[67] *Complaint* ¶¶ 29, 53–54.

[68] *Id.*; *Falsified Product Listing Sheets* (including Salt Lake City address).

[69] *See id.*; *Falsified Product Listing Sheets* (including Salt Lake City address).

[70] *Complaint* ¶¶ 29, 32, 37, 48–49.

[71] *Id.* ¶¶ 28–29.

[72] *See id* ¶¶ 32–34; *Falsified Product Listing Sheet*.

[73] *Shrader*, 633 F.3d at 1245.

[74] *Falsified Product Listing Sheet*.

foreseeable and reasonable that Icon Direct would be hailed into a Utah court to defend that activity.

The court is unpersuaded by Icon Direct's attempt to distinguish the facts here from *Kindig* and *Purple Innovations*. Icon Direct argues those cases are inapplicable because it received TEI's Product Listing Sheet from a third-party and not TEi's website, so it never reached into Utah.[75] This argument fails for two reasons: first, it relies on the supplemental declaration submitted with its Reply, which the court cannot consider.[76] Second, the origin of the Product Listing Sheet is immaterial to the personal jurisdiction analysis. Regardless of how it obtained the Product Listing Sheet, Icon Direct aimed its action at Utah by taking TEi's Product Listing Sheet that included a Utah address, altering it but leaving the Utah address, and selling more than eighty-five products that claim certification by TEi.[77] Under the test articulated in *Calder* and *Shrader*, this is sufficient activity to hale Icon Direct into a court in Utah.

The final element of the harmful effects test—that Icon Direct knew the brunt of the injury would be felt in Utah—is also met here. This element rises and falls with the second element: by showing Icon Direct intentionally directed its activity at Utah, TEi also shows Icon Direct knew the effects would be felt in Utah.[78] Because the Complaint alleges Icon Direct was aware TEi is located in Utah, it knew the brunt of the injury would be felt in the state.[79]

---

[75] *Minute Entry*; *see also Reply* 4–5, 7 n.2. In *Kindig*, the defendant donated to the plaintiff, and in return, the plaintiff sent an image to defendant, which the defendant then copied and created derivatives works from. *Kindig*, 157 F. Supp. 3d at 1171. And in *Purple Innovations*, the defendant repeatedly requested information from plaintiff and posted specific reviews of plaintiff. *Purple Innovations*, 2017 WL 3172810, at *1–2.

[76] *See supra* note 2.

[77] *See False Product Listing Sheet*; *Complaint* ¶ 37.

[78] See *XMission*, 105 F.4th at 1312 ("We previously have suggested that by satisfying the 'first two prongs' of the harmful-effects test—an intentional action expressly aimed at the forum state—a plaintiff would show the defendant knew the 'effects would be felt in' the forum." (quoting *Dudnikov*, 514 F.3d at 1077)).

[79] *See Complaint* ¶¶ 32–33 (alleging Icon Direct included TEi's Utah address on its Falsified Product Listing Sheet).

Because the harmful effects test is satisfied, the court concludes Icon Direct purposefully directed its activities at Utah.

2. Arising Out Of

The minimum contacts test next requires the court decide whether TEi's injuries arise out of Icon Direct's contacts with Utah.[80] "The arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum."[81] Here, this element is met: Icon Direct's contact with Utah is the copying of information from a Utah-based website and including a Utah address on the Falsified Product Listing Sheet.[82] TEi's claims all derive from that contact. Accordingly, this element is met, and the court concludes minimum contacts exist here.

*B. Traditional Notions of Fair Play and Substantial Justice*

Even if minimum contacts exist, the exercise of personal jurisdiction must be reasonable in light of the circumstances of the case.[83] Satisfying the minimum contact element creates an assumption that jurisdiction does not violate "traditional notions of fair play and substantial justice."[84] The defendant then "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[85] The court considers the following factors:

---

[80] *See Dudnikov*, 514 F.3d at 1078.

[81] *XMission*, 105 F.4th at 840 (citing *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 264 (2017)).

[82] *Complaint* ¶¶ 28, 32–33.

[83] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.43 1270, 1279 (10th Cir. 2005).

[84] *See Int'l Shoe*, 326 U.S. at 316.

[85] *Rudzewicz*, 471 U.S. at 477.

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.[86]

Icon Direct fails to make a compelling case that warrants constitutional concern. Its argument is primarily based on its location: it argues it is a Michigan company based in Indiana, far from Utah; Utah has minimum interest in this case; and the relevant Icon Direct witnesses and employees are based in Indiana.[87] But while the first factor weighs in its favor, that factor is balanced against the third factor: TEi has an interest in convenient, effective relief in the forum of its choice. The other factors are either neutral or weigh in favor of personal jurisdiction here. Utah has an interest in resolving its dispute based on Icon Direct's contacts with the forum state.[88] The efficiency factor is neutral because there has been no substantive motion practice in this case and discovery has not yet commenced.[89] And, as the parties agree, Indiana and Utah have equal interest in deciding the federal claims at issue here.[90]

Accordingly, the court concludes it has personal jurisdiction over Icon Direct.

---

[86] *Pro Axess*, 428 F.3d at 1279–80.

[87] *Motion* at 19–20; *see also Reply* at 9–10.

[88] *See supra* Section I.A.1. *See also Alfwear, Inc. v. IBKUL UBHOT LTD.,* No. 2:21-cv-00698-DBB-JCB, 2022 WL 3705483 (D. Utah Aug. 26, 2022) (explaining "Utah has a sufficiently strong interest in retaining jurisdiction because [Plaintiff] is located in Utah and claims that an out-of-state actor has infringed its trademark," because "a 'State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors'" (quoting *Rudzewicz*, 471 U.S. at 473)).

[89] *See generally docket*.

[90] *Opposition* at 17 n.13; *Reply* at 10. TEi argues Utah has a heightened interest in deciding the claim that arises under Utah law. *See Opposition* at 17 (citing *Complaint* ¶¶ 82–92). Because this factor does not change the outcome, the court assumes this factor is neutral.

## II. Venue

Icon Direct also seeks dismissal because venue is improper.[91] Venue is proper in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[92] When venue is challenged, the court follows a two-step analysis: (1) "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims" and (2) "determine whether substantial events material to those claims occurred in the forum district."[93] "The substantiality requirement is satisfied upon a showing of acts and omissions that have a close nexus to the alleged claims."[94] "[W]here a defendant's allegedly unlawful acts occurred over the internet, 'a substantial part of the events occurred in Utah' for purposes of venue if the defendant 'intentionally reached' into the forum 'in an effort to do harm to the Utah business, knowing its location in Utah.'"[95]

Here, Icon Direct took Utah-based materials, altered those materials to create the False Product Listing Sheet, and posted the sheet on its website with TEi's Salt Lake City, Utah address prominently featured. These actions are directed at Utah and therefore satisfy venue.

## CONCLUSION

For the reasons explained above, the Motion seeking dismissal is DENIED.[96]

---

[91] *Motion* at 20–21.

[92] 28 U.S.C. § 1391(b).

[93] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010).

[94] *Id.* at 1166 (citation modified).

[95] *Purple Innovations*, 2017 WL 3172810, at *9 (quoting *Diesel Power Source, LLC v. Crazy Carl's Turbos Inc.*, 2015 WL 1034231, at *10 (D. Utah Mar. 10, 2015)).

[96] Dkt. 34.

SO ORDERED this 15th day of September, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge